# NO. 12-24-00023-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | |
| *THOMAS FULLER MASON,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

## *MEMORANDUM OPINION*

Thomas Fuller Mason filed this original proceeding to challenge Respondent's amended discovery order and denial of his motion for clarification.[1] We deny the writ.

## BACKGROUND

Relator is the son of Walter Fuller Mason, who died on August 19, 2002, and the grandson of T.O. Mason. Relator served as executor of Walter's estate and trustee of a testamentary trust created for the benefit of Walter's wife Elizabeth Mason. Real Parties in Interest Maja Mason Steele and Thomas Theron Mason (collectively RPIs) are Relator's two children. When Elizabeth died on May 31, 2006, the trust property was to be split into three trusts for the benefit of Relator and each RPI. These trusts were never created.

Consequently, on August 6, 2020, RPIs sued Relator for breach of fiduciary duty, conversion, and partition of real estate and mineral interests, and requested an accounting.[2]

---

[1] Respondent is the Honorable J. Clay Gossett, Judge of the 4th District Court in Rusk County, Texas.

[2] The record contains RPIs' second amended petition with no file mark, but the certificate of service is dated December 18, 2023. We do not consider the allegations in this petition, as it was not the live pleading at the time of Respondent's amended order. *See In re Gothard*, Nos. 12-23-00296-CV & 12-23-00307-CV, 2024 WL 739785, at *3 n.5 (Tex. App.—Tyler Feb. 22, 2024, orig. proceeding) (mem. op.) (considering live pleading at time of ruling); *see also In re Methodist Primary Care Grp.*, No. 14-17-00299-CV, 2017 WL 3480292, at *2 (Tex.

According to RPIs, upon Walter's death, Relator "began a course of conduct to deceive and cheat his children ... of their rightful inheritance." Their allegations against Relator include (1) mischaracterizing certain property as community property instead of separate property, (2) placing his interests above theirs, (3) making fraudulent representations and conveyances, (4) paying RPIs less than what their respective interests entitled them to, (5) clouding the title to their interests in certain property, (6) fraudulently representing to oil companies that he was the sole owner of Walter's oil, gas, and other mineral interests and receiving royalty payments as a result, and (7) fraudulently concealing certain of Walter's property that Relator assumed and claimed as his sole property. RPIs seek actual and punitive damages.

On December 2, Respondent signed the following order:

> …Thomas Fuller Mason shall make a full accounting to the Court along with all documentation used to support that accounting for the influx and outflow of money into his hands whereby he shall account for all property both real, personal and mixed which he has ever had in his possession or under his control which he inherited from his father, Walter Fuller Mason, which accounting shall be completed and filed with this Court with copies delivered to Plaintiffs' attorneys on or before 5:00 p.m. on December 8, 2022.

In January 2023, RPIs filed a motion to show cause for failure to file an accounting as ordered and, on March 23, served Relator with a subpoena to appear before Respondent on April 3. The subpoena commanded Relator to produce five categories of documents. Respondent subsequently denied Relator's motion for protection and ordered Relator to produce responsive documents no later than May 20.

Relator filed a petition for writ of mandamus on May 19, and this Court conditionally granted the writ on grounds that (1) RPIs were not entitled to category four's request for tax returns, and (2) the remaining categories of documents were overbroad as a matter of law.[3] We directed Respondent to vacate his order denying Relator's motion for protection and ordering Relator to respond to the five categories of documents, and in its stead, to issue an order imposing limits on categories one, two, three, and five, and compelling Relator to respond to

---

App.—Houston [14th Dist.] Aug. 14, 2017, orig. proceeding) (mem. op.) (per curiam) ("Courts measure the scope of discovery by the live pleadings regarding the pending claims.").

[3] *In re Mason*, No. 12-23-00138-CV, 2023 WL 4680849, at *9 (Tex. App.—Tyler July 21, 2023, orig. proceeding) (mem. op.).

only categories one, two, three, and five, as limited. On August 3, Respondent directed Relator's counsel to submit an order in accordance with our opinion. Relator did so and on August 10, Respondent signed that order. Category two of the order required Relator to produce certain documents from August 19, 2002, through June 30, 2006. On August 18, Relator served a response to order for production. Because Respondent complied with our opinion and order, we dismissed the first original proceeding as moot on August 31.[4]

RPIs filed a proposed amended order on September 5. On October 10, RPIs filed a brief "setting forth the reasons that Plaintiffs are requesting the Court to hold Defendant in contempt for failing to file a proper accounting and to order Defendant to produce all records which have been requested of him in the Amended Order which has been submitted to the Court." On November 28, Respondent signed the amended order expanding category two's time limitation to August 19, 2002, through the present date. Relator filed a motion for clarification and/or reconsideration, which Relator denied.[5] Relator filed this original proceeding on February 12, 2024.

## PREREQUISITES TO MANDAMUS

Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal. *See **In re Daisy Mfg. Co.***, 17 S.W.3d 654, 658 (Tex. 2000) (orig. proceeding) (per curiam). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. ***Walker v. Packer***, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). A trial court has no discretion in determining what the law is or in applying the law to the facts. ***Id***. at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in mandamus. ***Id***. The relator has the burden to establish both prerequisites to mandamus. ***In re Fitzgerald***, 429 S.W.3d 886, 891 (Tex. App.—Tyler 2014, orig. proceeding).

---

[4] ***In re Mason***, No. 12-23-00138-CV, 2023 WL 5663229, at *1 (Tex. App.—Tyler Aug. 31, 2023, orig. proceeding) (per curiam) (mem. op.).

[5] Relator's counsel set his motion for a hearing on January 17, 2024, at which Respondent stated that he already signed an order denying the motion and that "this is a waste of our time." Relator's counsel informed Respondent that he was unaware of the order denying his motion. Respondent subsequently gave Relator thirty days from the hearing date to respond to the amended order.

A party will not have an adequate remedy by appeal: (1) when the appellate court would not be able to cure the trial court's discovery error; (2) where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error; and (3) where the trial court disallows discovery and the missing discovery cannot be made a part of the appellate record or the trial court, after proper request, refuses to make it a part of the record. *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding); *Walker*, 827 S.W.2d at 843. Because parties are not entitled to unlimited discovery, the trial court must impose reasonable discovery limits. *In re Hyundai Motor Co.*, No. 12-19-00417-CV, 2020 WL 1445303, at *6 (Tex. App.—Tyler Mar. 25, 2020, orig. proceeding) (mem. op.). A discovery order that compels overly broad discovery is an abuse of discretion. *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding) (per curiam).

<u>**ABUSE OF DISCRETION**</u>

Relator asserts that Respondent abused his discretion by signing the amended order because (1) no request, motion, or hearing accompanied the order, (2) the law of the case doctrine applies, and (3) the amended order is overbroad.

**<u>Lack of Request, Motion, or Hearing</u>**

Citing *In re Harris*, 315 S.W.3d 685 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding), Relator contends that Respondent abused his discretion by signing the amended order without a new discovery request, motion, or hearing.

In *Harris*, plaintiff Virgie Arthur filed a motion to compel, and after a hearing, defendant Art Harris produced multiple documents. *Harris*, 315 S.W.3d at 697. Arthur did not file another motion to compel or serve additional discovery requests. *Id*. At a later hearing on Arthur's motion to compel against another defendant, Arthur made limited references to Harris and the trial court considered no arguments or objections from Harris. *Id*. Nevertheless, the trial court ordered Harris to turn over a computer hard drive, external drives, and jump drives to a special master. *Id*. Harris filed a motion to clarify, which made clear his intent to reassert previous objections, but the trial court denied the motion. *Id*. The appellate court concluded as follows:

> Because Arthur did not file a motion to compel further discovery from Harris following the November 21, 2008 hearing, Harris *had no opportunity to urge his objections and motion for a*

*protective order prior to being ordered to produce the documents* sought by Arthur. We hold that in compelling discovery from Harris without requiring Arthur to identify specific discovery requests with which Harris had not complied and without having before it a motion to compel discovery from Harris, the trial court acted arbitrarily and without considering the discovery rules.

*Id*. (emphasis added).

In the present case, at a hearing on October 3, 2023, RPIs counsel mentioned the amended order to expand the subpoena to include documents leading up to the present date. Respondent stated that he would review the original and amended orders.[6] On October 10, RPIs filed briefing in the trial court in which they expressed their "understanding that the Court desires a brief setting forth the reasons that Plaintiffs are requesting the Court to hold Defendant in contempt for failing to file a proper accounting and to order Defendant to produce all records which have been requested of him in the Amended Order which has been submitted to the Court." RPIs asked Respondent to sign the amended order. They argued, "Until the financial records which have not been provided are received which should reveal the true present status of Walter's estate, total damages cannot be calculated." Relator filed a brief regarding RPIs' motion to show cause for failure to file accounting and proposed amended order on the production of documents, as well as a response to RPIs' brief, in which he argued that Respondent should not sign the amended order. In response, RPIs argued that Relator's "role as a fiduciary requires him to openly provide Plaintiffs all of his records in order for him to prove that he can identify his funds from commingled funds which the law requires him to do."

Unlike in *Harris*, the record demonstrates that the issue of the amended order was presented to Respondent and Relator had an opportunity to object, and did so, before Respondent signed the amended order. Certainly, the course of proceedings by which Respondent came to sign the amended order is less than ideal.[7] But because the issue of the amended order was

---

[6] In his reply brief, Relator also maintains that RPIs abandoned their "discovery requests in the subpoena for Mason to appear at the show cause hearing on October 3, 2023" because the subpoena did not contain a duces tecum. He cites not authority to support this position. *See* TEX. R. APP. P. 52.3(a) (mandamus petition must contain clear and concise arguments for contentions made, with appropriate citations to authorities and appendix or record); *see also* **In re Fitzgerald**, 429 S.W.3d 886, 897 (Tex. App.—Tyler 2014, orig. proceeding) (fulfilling duty under Rule 52.3(a) entails more than proffering mere conclusions; relator must provide substantive legal analysis supporting arguments and conclusions).

[7] It is not clear why RPIs waited until September 5 to file a proposed order when we lifted our stay on July 21, Respondent directed Relator to provide an order on August 3, Respondent signed the order on August 10, and this Court did not dismiss the original proceeding until August 31. They filed their proposed amended order only after this Court dismissed the first original proceeding. Nor did RPIs file a motion for rehearing with this Court. *See* TEX. R. APP. P. 52.9.

raised and Relator had an opportunity to object before Respondent signed the amended order, we cannot conclude that Respondent abused his discretion by acting without a new discovery request, specific motion, or hearing.

**Law of the Case**

RPIs assert that this Court's previous opinion did not conclusively decide the discovery issue presented in the current original proceeding. In his reply brief, Relator responds that the August 10 order became the law of the case once this Court dismissed the first original proceeding as moot.[8]

Under the law of the case doctrine, "questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." *In re United Servs. Auto. Ass'n*, 521 S.W.3d 920, 927 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding). "By narrowing the issues in successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency." *Id*. "Although an original proceeding is not an 'appeal,' the law of the case doctrine applies when an issue has been resolved on the merits in a prior mandamus proceeding, even though it does not proceed to a court of last resort or the issues raised have not been resolved by a court of last resort." *Id.* at 927-28. "If the appellate court resolves a question of law in a mandamus proceeding, that merits determination is the law of the case." *Id*. at 928; *see In re A.T.M.*, No. 12-07-00243-CV, 2009 WL 1492832, at *3 (Tex. App.—Tyler May 29, 2009, pet. denied) (mem. op.) ("Where we resolve an issue on its merits in a mandamus proceeding, our resolution may, where otherwise appropriate, be applied as law of the case in further proceedings").

In the previous original proceeding, category two sought the following:

> Any and all documents regarding accounts from any financial institution of any kind located in Rusk County, Texas in which Thomas Fuller Mason has an interest, including but not limited to savings accounts and investment accounts of any nature whatsoever.

*In re Mason*, No. 12-23-00138-CV, 2023 WL 4680849, at *2 (Tex. App.—Tyler July 21, 2023, orig. proceeding) (mem. op.). We explained that RPIs sued Relator individually, as executor of Elizabeth's estate, and as trustee of the trusts created under Walter's will. *Id*. at *6. Walter died in 2002 and Elizabeth died in 2006. *Id*. The RPIs' amended petition alleged that "*Upon Walter*

---

[8] *See* TEX. R. APP. P. 52.5 (relator may file reply brief addressing any matter in the response).

6

*Fuller Mason's death*, Defendant immediately began a course of conduct to deceive and cheat his children, Plaintiffs herein, of their rightful inheritance." ***Id***. (emphasis original). They alleged such misconduct as Relator failed in his role as a fiduciary, misrepresented the parties' respective interests in estate property, converted property, mischaracterized certain estate property, and committed fraudulent acts, all postdating Walter's death. ***Id***. Accordingly, Relator's alleged wrongful activities apparently occurred after Walter's death in 2002. ***Id***. In RPIs' mandamus response, they alleged that "[Relator] failed in his responsibilities to [RPIs] in practically everything he has done *since he began serving as Executor of Walter's estate*" and they acknowledged their need for "... information regarding the full extent of the nature and source of the assets, properties and funds accumulated by [Relator] *since 2002*." ***Id***. (emphasis original). We identified two problems with this category. First, category two contained no temporal limitation, which required Relator to produce documents no matter how remote and encompassed decades old document. ***Id***. Thus, category two was overbroad as a matter of law. ***Id***. Second, category two sought all documents from any financial institution of any kind in Rusk County in which Relator had an interest, including Relator's personal financial information that had no relation to the pertinent issues in the case. ***Id***. at *8. We explained that RPIs' potential need to acquire information for purposes of their commingling allegation did not authorize document production "simply to explore." ***Id***. (quoting ***Dillard Dep't Stores, Inc. v. Hall***, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding) (per curiam)). Because category two could have been more narrowly tailored as to subject matter, it was overbroad as a matter of law. ***Id***.

Subsequently, in accordance with this Court's opinion, the trial court signed an order modifying category two as follows:

> Any and all documents regarding accounts from any financial institution of any kind located in Rusk County, Texas *from August 19, 2002 through June 30, 2006 in which Thomas Fuller Mason deposited funds that once belonged to Walter Fuller Mason.*

(emphasis added). Consequently, we dismissed the proceeding as moot. ***In re Mason***, No. 12-23-00138-CV, 2023 WL 5663229, at *1 (Tex. App.—Tyler Aug. 31, 2023, orig. proceeding) (per curiam) (mem. op.). But the November order subsequently expanded category two's time limitation, requiring production of the following documents:

7

Any and all documents regarding accounts from any financial institution of any kind located in Rusk County, Texas *from August 19, 2002 through the present date* in which Thomas Fuller Mason deposited funds that once belonged to Walter Fuller Mason.

(emphasis added).

In our previous opinion, we were faced with whether category two was overbroad as a matter of law for lack of any time limitation. *See Mason*, 2023 WL 4680849, at *6. We did not decide what specific time period would be appropriate and we did not evaluate the propriety of the August 19, 2002 through June 30, 2006 date. Nor is our dismissal of the proceeding as moot tantamount to a merits ruling on the issue. *See Ritchey v. Vasquez*, 986 S.W.2d 611, 612 (Tex. 1999) (per curiam) (dismissal as moot is not a ruling on the merits). Furthermore, our opinion did not set forth a bright line rule that parties can never seek years' worth of documents; rather, a request must contain a time limitation that does not exceed the time period *at issue in the case*. *See Mason*, 2023 WL 4680849, at *6; *see also In re Stagner*, No. 01-18-00758-CV, 2020 WL 370565, at *4 (Tex. App.—Houston [1st Dist.] Jan. 23, 2020, orig. proceeding) (mem. op.). Decades old documents could conceivably be discoverable if called for by the relevant time period at issue in the particular case. *See In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 251-52 (Tex. 2021) (orig. proceeding) (sheer volume of discovery request does not in itself render request irrelevant or overbroad as matter of law); *see also General Motors Corp. v. Lawrence*, 651 S.W.2d 732, 734 (Tex. 1983) (orig. proceeding) (limiting discovery to trucks for model years 1949 through 1972); *see In re Redman*, No. 12-23-00212-CV, 2023 WL 6760074, at *6 (Tex. App.—Tyler Oct. 11, 2023, orig. proceeding) (mem. op.) (although some discovery of financial links may be appropriate considering alter ego allegations, discovery requests were not limited in topical scope *and* covered an unreasonably long period of time); *In re Nat'l Collegiate Athletic Ass'n*, 543 S.W.3d 487, 493 (Tex. App.—Dallas 2018, orig. proceeding) (trial court acted within discretion by compelling production of documents from 1950 to present); *see generally In re Exmark Mfg. Co., Inc.*, 299 S.W.3d 519, 531 (Tex. App.—Corpus Christi 2009, orig. proceeding) (noting that although a discovery order covering a certain period - in that case ten years - might be too broad under some circumstances, there is nothing too broad as a matter of law about all discovery orders covering ten years). Because we did not previously address the specific question at issue here, i.e., the propriety of a particular time limit, we cannot conclude that the law of the case doctrine applies. *See A.T.M.*, 2009 WL 1492832, at *3 (law of

the case doctrine "does not necessarily apply when either the issues or the facts presented at successive appeals are not substantially the same as those presented before").

**Overbreadth**

Relator argues that requiring revelation of his "personal financial information for a period of over twenty years is both overbroad and requires the production of documents that are irrelevant to the instant case." RPIs respond that category two's limitation to only those accounts in which Relator deposited funds once belonging to Walter, combined with the temporal limitation in the amended order, reasonably tailors category two to relevant matters, i.e., whether Relator commingled his "funds and property with theirs."[9] We agree.

"[D]iscovery must be reasonably limited in time and geographic scope." *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 489 (Tex. 2014) (per curiam) (orig. proceeding). A discovery request is overbroad when it encompasses time periods, activities, or subject matters that are not relevant to the case in which the discovery is sought. *See In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 226 (Tex. 2016) (orig. proceeding) (per curiam). Such requests are overly broad as a matter of law. *In re United Fire Lloyds*, 578 S.W.3d 572, 580 (Tex. App.—Tyler 2019, orig. proceeding); *In re Brookshire Grocery Co.*, No. 12-06-00065-CV, 2006 WL 2036569, at *2 (Tex. App.—Tyler July 21, 2006, orig. proceeding) (mem. op.). "Discovery requests that are overbroad in time encompass time periods beyond those at issue in the case." *Stagner*, 2020 WL 370565, at *4. "Discovery orders requiring document production from an unreasonably long time period or from distant and unrelated locales are impermissibly overbroad." *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam). "While courts often

---

[9] With little to no substantive analysis, Relator briefly argues that category two is "not tailored to include only relevant matters, but [is] overbroad in time, subject matter, and seek[s] irrelevant information." *See* TEX. R. APP. P. 52.3(a); *see also Fitzgerald*, 429 S.W.3d at 897. We previously concluded that category two was overbroad as to subject matter because it sought all documents from any financial institution of any kind in Rusk County in which Relator had an interest, including Relator's personal financial information that had no relation to the pertinent issues in the case. *Mason*, 2023 WL 4680849, at *8. Relator subsequently drafted a proposed order that changed the language to "[a]ny and all documents regarding accounts from any financial institution of any kind…in which Thomas Fuller Mason deposited funds that once belonged to Walter Fuller Mason." Respondent signed the proposed order and Relator responded to the order for production, directing RPIs to previously produced documents. RPIs' proposed amended order did not change this language. The time limitation is the only difference between category two in the August order and category two in the November amended order. Moreover, category two requires that Relator only produce documents from financial institutions in Rusk County in which he deposited funds that *once belonged to Walter*. We do not read category two as requiring production of Relator's personal financial information or seeking irrelevant information.

hold that requests for thirty or fifty years' worth of information are fishing expeditions, even requests for five years' worth of information have been held overbroad" when the request exceeds the relevant time period. ***Stagner***, 2020 WL 370565, at *4; *see **In re Allstate Cty. Mut. Ins. Co.***, 227 S.W.3d 667, 669 (Tex. 2007) (per curiam) (orig. proceeding).

When we previously evaluated category two, it contained no temporal or subject matter limitations, rendering it overbroad as a matter of law. The August 10 order set a period of August 19, 2002 (date of Walter's death) through June 30, 2006, and included a new subject matter limitation. Now, the amended order imposes a twenty-plus year time limitation but contains the same subject matter limitation drafted by Relator. According to the record, some of the real estate transactions that RPIs' petition challenges occurred as late as 2019. Additionally, RPIs' allege that Relator fraudulently obtained royalty payments on minerals previously owned by Walter by misrepresenting that he owned 100% of the mineral interests when he only owned one third. In their request for an accounting, RPIs stated, "It is now known that [Relator] has received royalty payments from various oil companies which have not been shared with the [RPIs] even though he took possession of those monies in his individual and fiduciary capacity as" executor of Walter's estate and trustee of the residuary trust created by Walter's will. At the October 3 hearing, RPIs' counsel read Relator's deposition into evidence, in which Relator acknowledged that he continues receiving royalty payments. Counsel also represented that unsigned division orders had been produced. As part of his preliminary accounting, Relator provided royalty information through 2019. In his reply brief, Relator represents that he produced the 2002 tax return for Walter's estate, 2002 through 2006 tax returns for the Walter Fuller Mason Trust, the 2006 tax return for Elizabeth's estate, his 2010 through 2019 personal tax returns, and tax returns for the Thomas Fuller Mason Trust from 2017 through 2019. Relator states that he "produced 1099s associated with the oil and gas interests, property tax receipts, division orders, and estate and trust account bank statements." Moreover, Relator's response to order for production on August 18, 2023, directed RPIs to previously produced documents regarding certain property tax records from August 19, 2002, to the present. At a previous hearing on RPIs' motion to show cause and Relator's motion for protection, RPI's expert Tony Morgan, a certified public accountant, testified to receiving "all the 1099s," from which "you can actually see what [Relator] received." He determined how Relator divided certain royalties by viewing IRS form 1099s, noting that some royalties were either not split or not split correctly.

Morgan testified that, based on the information he had, he calculated the present cash value of money not paid to RPIs from Walter's death in 2002 through March 2022.

"The universe of an executor's fiduciary obligations includes a duty to exercise reasonable care in the administration of the estate property, and a duty to avoid commingling of estate funds with non-estate assets, including the executor's personal property." *In re Mittelsted*, 661 S.W.3d 639, 650-51 (Tex. App.—Houston [14th Dist.] 2023, orig. proceeding) (internal citations omitted). Because an executor holds and manages property interests of others, he or she serves as a trustee and is held to the highest standards of conduct. *Id*. at 650. Category two, as amended, only requires that Relator produce documents from financial institutions in Rusk County in which he deposited funds that once belonged to Walter.[10] If Relator deposited any such funds into any financial institution in Rusk County, RPIs are entitled to this information for purposes of their commingling allegation. Because Relator still receives royalty payments, Relator's 2023 response to order for production demonstrates he previously produced documents through the present, and Morgan calculated amounts owed through 2022, Respondent could reasonably conclude that 2002 to the present constitutes a relevant time period and is therefore not unreasonably long. This is particularly true given that the proof necessary to distinguish funds is peculiarly within the knowledge and possession of the executor as trustee. *Id*. at 651.

But we again caution that RPIs' potential need to acquire information for purposes of their commingling allegation does not authorize document production "simply to explore." *Mason*, 2023 WL 4680849, *8 (quoting *Hall*, 909 S.W.2d at 492); *see In re Allstate Fire & Cas. Ins. Co.*, 617 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.] 2021, orig. proceeding) (Discovery undertaken with the purpose of finding an issue, rather than in support of an issue already raised by the pleadings, constitutes an impermissible fishing expedition). During his testimony, Morgan acknowledged that when combining Relator's accountings and the produced documents, "a lot of what is needed is there."[11] This testimony, along with Morgan's testimony

---

[10] Relator need not produce documents that do not lie within his possession, custody, or control; nor can he be forced to create documents that do not exist. *See In re Preventative Pest Control Houston, LLC*, 580 S.W.3d 455, 460 (Tex. App.—Houston [14th Dist.] 2019, orig. proceeding).

[11] Morgan reviewed Relator's preliminary and supplemental accountings and studied tax returns, but he testified to wanting more information to prepare an accounting in accordance with accounting principles and the estates code. He believed Relator's accountings and supporting documents were insufficient to prepare such an accounting. He explained that he did not know that all real property and mineral interests had been accounted for, so they needed to be confident of the starting place, and there could be some non-real property unaccounted for. When Relator's counsel asked whether Morgan knew of any other property, based on the documents he reviewed,

11

that he determined amounts owed to RPIs through March 2022 and the documents Relator already produced, suggests that Morgan has most, if not all, the documents needed to prepare a proper accounting. But an opinion must be based on relevant facts and data. *See **K & L Auto Crushers,*** 627 S.W.3d at 254 (rejecting argument that requested discovery was unnecessary because some was available from other sources and K & L Auto could and did hire experts to opine that chargemaster rates were unreasonable). Respondent was required to consider that the requested information is not only relevant, but important to a fair, just, and fact-based resolution of the case. *See **id**.* at 255. Accordingly, under the circumstances of this case, we simply cannot conclude that Respondent abused his discretion by compelling the production of certain documents from the date of Walter's death to the present date. *See **id.*** at 251 (discovery rules must be liberally construed to allow litigants to obtain fullest knowledge of facts and issues before trial). Thus, Respondent likewise did not abuse his discretion by denying Relator's motion for clarification and/or reconsideration.

## DISPOSITION

Having determined that Relator has not shown an entitlement to mandamus relief, we ***deny*** the petition for writ of mandamus. We ***lift*** our stay of February 14, 2024.

**GREG NEELEY**
Justice

Opinion delivered April 10, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

---

that should have been listed on the preliminary accounting, he replied, "Unless there's a bank account or a securities account that we're totally unaware of or if there's oil and gas or properties that we're not aware of, nonproducing leases or something like that."



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 10, 2024**

**NO. 12-24-00023-CV**

**THOMAS FULLER MASON,**
Relator
V.

**HON. JUDGE J. CLAY GOSSETT,**
Respondent

## ORIGINAL PROCEEDING

ON THIS DAY came to be heard the petition for writ of mandamus filed by Thomas Fuller Mason; who is the Relator in appellate cause number 12-24-00023-CV and the defendant in trial court cause numbers 2020-160 & 2020-160A, pending on the docket of the 4th Judicial District Court of Rusk County, Texas. Said petition for writ of mandamus having been filed herein on February 12, 2024, and the same having been duly considered, because it is the opinion of this Court that the writ should not issue, it is therefore CONSIDERED, ADJUDGED and ORDERED that the said petition for writ of mandamus be, and the same is, hereby **denied**.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*